IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA ASSOCIATION OF
PROFESSIONAL LOBBYISTS, INC.,
a Florida not for profit corporation;
SPEARMAN MANAGEMENT COMPANY,
a Florida corporation; GUY M.
SPEARMAN III, a natural person;
RONALD L. BOOK, P.A., a Florida
professional association; and RONALD
L. BOOK, a natural person ,

       Plaintiffs,

vs.                           CASE NO.: 4:06cv123-SPM/WCS

DIVISION OF LEGISLATIVE
INFORMATION SERVICES OF THE
FLORIDA OFFICE OF LEGISLATIVE
SERVICES, a Florida state agency; THE
FLORIDA COMMISSION ON ETHICS,
an independent constitutional commission;
TOM LEE, as President of the Florida
Senate; and ALLAN BENSE, as Speaker
of the Florida House of Representatives

       Defendants.
_____/

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
AND FOR SUMMARY JUDGMENT**

"Florida, like every other state in the union, has enacted legislation regulating the conduct of those who 'lobby' the state's legislative or executive officials."  <u>Florida League of Professional Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457,

458 (11th Cir. 1996). This case presents a challenge to a new lobbying law, chapter 2005-359, Laws of Florida, codified at sections 11.045 and 112.3215, Florida Statutes (the "Act"). The Florida Legislature passed the Act in a special session in December 2005.

The Act contains parallel provisions regulating legislative branch lobbying (§ 11.045, Fla. Stat.) and executive branch lobbying (§ 112.3215, Fla. Stat.). Two main features of the Act concern expenditure restrictions and disclosure requirements.

With regard to expenditures restrictions, the Act provides that "no lobbyists or principal shall make, directly or indirectly, and no member or employee of the of the legislature" nor "any agency official, member or employee shall knowingly accept, directly or indirectly, an expenditure." §11.045(4)(a) and § 112.3215(6)(a), Fla. Stat. "'Expenditure' means a payment, distribution, loan, advance, reimbursement, deposit, or anything of value made by a lobbyist or principal for the purpose of lobbying." § 11.045(4)(a) and § 112.3215(6)(a), Fla. Stat.

With regard to the disclosure requirements, lobbying firms are required by the Act to file quarterly reports designating the total compensation owed to the lobbying firm from principals in "the following categories: $0, $1 to $49,999; $50,000 to $99,999; $100,000 to $249,999; $250,000 to $499,999; $500,000 to $999,999; $1 million or more." § 11.045(3)(a)1.c. and § 112.3215(5)(a)1.c., Fla.

Stat.  In addition, lobbying firms must also break down the total compensation amount by each principal.  The reports must include the full name, business address, and telephone number of each principal, and the total compensation that each principal provided or owed to the lobbying firm in "the following categories: $0; $1 to $9,999; $10,000 to $19,900; $20,000 to $29,999; $30,000 to $39,999; $40,000 to $49,999; or $50,000 or more.  If the category '$50,000 or more' is selected, the specific dollar amount of compensation must be reported, rounded up or down to the nearest $1,000."  § 11.045(3)(a)2.b. and § 112.3215(5)(a)2.b., Fla. Stat.

Lobbying firms' compensation records may be subpoenaed for audit, "and such subpoena may be enforced in circuit court."  § 11.045(2)(e) and § 112.3215(5)(g), Fla. Stat.  A Legislative Auditing Committee, composed of five members of the Senate and five members of the House, are required to oversee an annual random audit, to be conducted by an independent audit contractor, of three percent of all legislative branch lobbying firms and a random sample of three percent of all executive branch lobbying firms. § 11.040(6), Fla. Stat.  "All audit reports of legislative lobbying firms . . . [must be] delivered to the President of the Senate and Speaker of the House of Representatives for their respective review and handling."  § 11.040(6)(i), Fla. Stat.  "All audit reports of executive branch lobbyists . . . [must be] delivered by an auditor to the Commission on Ethics."  § 11.040(6)(i), Fla. Stat.

For legislative lobbying, every sworn complaint or audit indicating a possible violation, other than a late filed report, is subject to investigation by designated committees for each house. § 11.045(7), Fla. Stat. A committee's recommendation for penalty is reported to the President of the Senate or Speaker of the House and submitted to the majority of the appropriate house for a final determination. § 11.045(7), Fla. Stat. Authorized penalties include "a fine of not more than $5,000, reprimand, censure, probation, or prohibition of lobbying for a period of time not to exceed 24 months." § 11.045(7), Fla. Stat.

For executive lobbying, every sworn complaint or audit indicating a possible violation, other than a late filed report, is subject to investigation by the Commission on Ethics. §§ 112.3215(8)(a) and (c), Fla. Stat. If the Commission on Ethics finds probable cause that a violation occurred, it submits a report to the Governor and Cabinet for a determination and imposition of a penalty. §§ 112.3215(9) and (10), Fla. Stat. Authorized penalties include reprimand, censure, or a prohibition on lobbying all agencies for a period not to exceed 2 years. § 112.3215(9), Fla. Stat. "If the violator is a lobbying firm, the Governor and Cabinet may also assess a fine of not more than $5,000." § 112.3215(10), Fla. Stat.

Plaintiffs are a lobbying organization, lobbying firms, and individuals who engage in lobbying activities. As their first argument, Plaintiffs contend that the Act was not validly enacted because it was not read three times after it was

introduced by the House at the special session.  Next Plaintiffs contend that the Act usurps the constitutional authority of the Florida Supreme Court to regulate the practice of law.  Plaintiffs then allege that expenditure restrictions, disclosure requirements, and enforcement provisions are unconstitutional on a multitude of grounds, including free speech and petition, due process, equal protection, privacy, and separation of powers.  They seek a preliminary injunction to enjoin enforcement of the Act.  They also seek entry of final summary judgment in their favor.

**I.      Plaintiffs' Burden**

Plaintiffs have the burden to demonstrate that they are entitled to a preliminary injunction by showing (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction were not granted, (3) that the threatened injury outweighs any harm an injunction may cause the defendant, and (4) that granting the injunction will not be adverse to the public interest. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002).  The burden on summary judgment is even higher. Plaintiffs must demonstrate that "as a matter of law" final judgment in the case should be entered in their favor.  Fed. R. Civ. P. 56(c).

**II.     No Substantial Likelihood of Success on the Merits**

    **A.     Valid enactment**

Plaintiffs contend that the Act was not validly enacted because it was not

read three times after it was introduced by the House at the special session. Their argument implicates two constitutional provisions. First, Article III, section 3(c)(1) provides that in a special session convened by the Governor's proclamation, "only such legislative business may be transacted as within the purview of the proclamation . . . or is introduced by consent of two-thirds of the membership of each house." Art. III, §3(c)(1), Fla. Const. Second, to be validly enacted, Article III, section 7 provides that a bill "must be read in each house on three separate days, unless this rule is waived by two-thirds vote."

A review of the legislative journal[1] shows compliance with both of the constitutional requirements. The House of Representatives, on the opening day of the special session, introduced by two-thirds vote the legislative business of lobbying regulation by introducing HB 63-B, an "act relating to lobbying," dealing expressly with compensation reporting and expenditure limitations, and "any companion measures that may be passed by the Senate." Journal of the House, Special Session B, 2005 at 3. From that point forward, the House could have introduced and considered any bill relative to the legislative business of lobbying regulation, not just HB 63-B.

When the House went on to consider the bill that became the Act, SB 6-B,

---

[1] "[W]hen enrolled, signed, and filed, acts of the legislature are prima facie valid." State v. Kaufman, 430 So.2d 904, 905 (Fla. 1983). "Courts have no substantive power to review and nullify legislative proceedings but can determine whether the legislative journals show that a statute has been duly enacted." Id. (citations omitted).

the House was not required to again introduce the legislative business of lobbying by two-thirds vote. They did so anyway. Journal of the House, Special Session B, 2005, at 48. After the vote to introduce SB 6-B, "the rules were waived and SB 6B was read a third time by title." Id. Article III, section 7, requires that a bill "be read in each house on three separate days, unless this rule is waived by two-thirds vote." (emphasis supplied). Because the rule was waived it was not necessary to read the bill on three separate days.

Based on the foregoing, it appears that the House validly enacted SB 6-B. Plaintiffs have not demonstrated a substantial likelihood of success on this ground; nor have they shown that they are entitled to judgment as a matter of law.

### B.    No regulation of the practice of law

Plaintiffs contend that for lawyers who are lobbyists, lobbying takes the form of practicing law. Lawyer lobbyists provide legal analysis of legislation to their clients, draft legislation, determine the procedures to pass legislation, and appear before legislative committees and executive agencies to analyze the legislation. Plaintiffs argue that by imposing compensation disclosure requirements upon lawyer lobbyists, the Act regulates the practice of law, in violation of the exclusive constitutional authority of the Florida Supreme Court to regulate the practice of law.

The Florida Constitution, Article V, section 15, vests the Florida Supreme

Court with "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." The Florida Supreme Court has rejected the argument that its exclusive jurisdiction precludes the legislative branch from enacting laws "to punish conduct deemed harmful to the public welfare if the conduct also falls within the purview of [the] Court's authority to discipline lawyers for violating the Code of Professional Responsibility in the course of their practice of law." Pace v. State, 368 So.2d 340, 345 (Fla. 1979). The Court recognized the legislature's authority to enact a law "'that affects the legal profession just as it can with regard to other occupations and professions." Id.

Although the Act, by imposing obligations on lawyer lobbyists, may have an impact on the practice of law, it does not appear that the legislature overstepped its authority as recognized in Pace. Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits on this issue; nor have they shown that they are entitled to judgment as a matter of law.

### C.  Expenditure restriction[2]

Plaintiffs contend that the Act, by imposing an absolute ban on direct and

---

[2] Plaintiffs argued in count four of their complaint that to the extent the expenditure restriction prohibits them from making campaign contributions to political candidates, the Act is unconstitutional. The Florida Legislature has recently passed SB 2000, which amends the definition of expenditure to exclude contributions. Therefore, Plaintiffs' argument as to this issue will likely become moot. Even if not moot, Plaintiffs do not need an injunction as to this provision to avoid irreparable injury. In making this determination, the Court has considered Plaintiffs' response (doc. 78), which the Court grants leave to file.

indirect expenditures for lobbying, violates their rights to freedom of speech and association, and to petition the government for redress.  Plaintiffs' arguments rest, however, on an unreasonable construction of the Act.

The Act provides that "no lobbyists or principal shall make, directly or indirectly, <u>and</u> no member or employee of the of the legislature" nor "any agency official, member or employee shall knowingly accept, directly or indirectly, an expenditure."  §11.045(4)(a) and § 112.3215(6)(a), Fla. Stat. (emphasis supplied).  The use of the conjunctive "and" in the Act makes clear the prohibition on expenditures applies only to expenditures that are made and accepted.  The Act's plain language shows that it amounts to no more than a ban on gifts and payments to officials.

Plaintiffs explain that they "do not challenge the authority of the Legislature to impose a prohibition on lobbyists' buying food and beverage for legislators, executive branch members, or giving other gifts or things of value to such persons to influence their use of government authority."  Although Plaintiffs contend that the expenditure prohibitions of the Act go far beyond what they agree would be appropriate, their position is not supported by the plain language of the Act.  A statute written in the conjunctive must be construed as it is plainly written unless doing so yields absurd results or is contrary to legislative intent. <u>Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. Of Admin. Hearings</u>, 686 So.2d 1349, 1356 (Fla. 1997).

Based on the foregoing, Plaintiffs have not demonstrated a substantial likelihood of success on their constitutional arguments regarding the expenditure restriction; nor have they demonstrated that they are entitled to judgment as a matter of law.

### D.   Disclosure requirements

Plaintiffs argue that the disclosure requirements are vague and standardless, thus unlawfully burdening their rights to free speech and association and to petition the government for redress.  Plaintiffs further argue that the disclosure requirements violate their rights to equal protection and privacy.

#### 1.   the Act is not vague or standardless

A regulation is void on its face if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926).  Plaintiffs cannot reasonably argue that they must guess at the meaning of the Act and their obligations to make disclosures.

Terms used in the Act are defined with reasonable clarity.  Furthermore, Plaintiffs may obtain an advisory opinion to address specific questions about the applicability and interpretation of the Act.  § 11.045(5) and §112.3215(11), Fla. Stat.  The availability of an advisory opinion weighs against a finding of vagueness.  See Comm'n on Indep. Colleges and Universities v. New York


Temp. State Comm'n on Regulating of Lobbying, 534 F.Supp. 489, 502-03 (N.D.N.Y. 1982).

The Act, furthermore, provides sufficient standards to prevent arbitrary enforcement. Discretion under the act to waive a requirement or penalty is tied to a good cause standard. See §§ 11.045(3)(e)5. and 6. and §§ 112.3215(5)(e)5., Fla. Stat. "'[G]ood cause' is a reasonable and intelligible standard that does not force people of general intelligence to guess at its meaning and therefore is not 'void for vagueness.'" McCallum v. City of Biddeford, 551 A. 2d 452, 453 (Me. 1988).

Plaintiffs also argue that the Act is overbroad because it requires lobbying firms to report all compensation, irrespective of whether the compensation is related to lobbying activities. A law will be struck down for overbreadth when "it does not aim specifically at evils within the allowable area of government control . . . but sweeps within its ambit other activities that constitute an exercise of freedom of speech . . . ." Thornhill v. Alabama, 310 U.S. 88, 97 (1940).

Plaintiffs' overbreadth argument is based on a flawed reading of the Act. The Act specifies that the compensation required to be reported is "for any lobbying activity." § 11.045(1)(b) and § 112.3214(1)(c), Fla. Stat. Lobbying firms need only report compensation earned for lobbying activity.[3] Moreover,

---

[3] For legislative branch lobbying, the term "lobbying" is defined as "influencing or attempting to influence legislative action or nonaction through oral or written communication or an attempt to obtain the goodwill of a member or employee of the Legislature." § 11.045(1)(f), Fla. Stat. For executive branch

"[a]pplication of the burdens of registration and disclosure of receipts and expenditures to lobbyists does not substantially interfere with the ability of the lobbyist to raise his voice." Meggs, 87 F.3d at 460 (quoting Fair Political Practices Comm'n v. Superior Ct. of Los Angeles, 599 P.2d 46, 54 (1979)).

Plaintiffs have not demonstrated a substantial likelihood of success on these issues; nor have they shown that they are entitled to judgment as a matter of law.

### 2. equal protection

Plaintiffs argue that the Act imposes special unjustifiable burdens targeting lobbyists, in violation of the government's duty to avoid favoring some speakers over others. Plaintiffs apparently argue that lobbyists are similarly situated to private citizens, disregarding the fact that unlike private citizens, lobbyists are paid to present a point of view. Often the services of lobbyists are deemed valuable because of the influence lobbyists have developed with public officials to shape the exercise of duties that should be exercised in the public interest. Plaintiffs cannot reasonably argue "that those who for hire attempt to influence legislation or who collect or spend funds for that purpose," United States v.

---

lobbying, the term "'[l]obbies' means seeking on behalf of another person, to influence an agency with respect to a decision of the agency in the area of policy or procurement or an attempt to obtain the goodwill of an agency official or employee. 'Lobbbies' also means influencing or attempting to influence, on behalf of another, the Constitution Revision Commission's action or nonaction through oral or written communication or attempt to obtain the goodwill of a member or employee of the Constitution Revision Commission." § 112.3215(1)(f), Fla. Stat.

Harriss, 347 U.S. 612, 625 (1954), are similarly situated with other citizens who petition the government.

The state has a compelling interest in imposing regulations on paid lobbyists which are not imposed on other citizens.  See Meggs, 87 F.3d at 462 (recognizing compelling interest of state of Florida in lobbying regulation). Plaintiffs have not demonstrated a substantial likelihood of success on their equal protection issue; nor have they shown that they are entitled to judgment as a matter of law.

### 3. privacy

Plaintiffs contend that the disclosure of information relating to lobbyists' compensation under the Act violates the right to privacy under Article I, section 23 of the Florida Constitution and the right to privacy recognized in the United States Constitution.  Plaintiffs' argument is unavailing because privacy rights protect natural persons.

The compensation disclosure requirement of the Act applies only to "lobbying firms." § 11.045(3) and § 112.3214(5), Fla. Stat.  A lobbying firm is a "business entity." § 11.045(1)(g) and § 112.3214(1)(g), Fla. Stat.  The individual plaintiffs in this case conduct their lobbying activity through lobbying firms. Plaintiff Book is an attorney and lobbyist whose firm is a professional association. Plaintiff Spearman's lobbying firm is a corporation.  Lobbying firms have no right to privacy under the Florida Constitution because the right to privacy "is a

personal one, inuring solely to individuals." Alterra Healthcare Corp. v. Estate of Francis Shelley, 827 So. 2d 936, 941 (Fla. 2002).   Under the United States Constitution, the right to privacy extends only to such fundamental interests as marriage, procreation, family relationships, and the rearing and education of children.  Carey v. Population Serv. Int'l, 431 U.S. 678, 684-85 (1977). "[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."  California Bankers Ass'n v. Shultz, 416 U.S. 21, 65 (1974).

Plaintiffs have not demonstrated a substantial likelihood of success on their privacy issues; nor have they shown that they are entitled to judgment as a matter of law.

### E.      Enforcement provisions

Plaintiffs argue that the investigation and enforcement provisions of the Act violate the rights to a jury trial and due process.  Plaintiffs also contend that the provisions of the Act  relating to fact finding and adjudication violates separation of powers.

A jury trial is guaranteed "in those cases in which the right was enjoyed at the time this state's first constitution became effective in 1845."  Dep't of Revenue v. Printing House, 644 So. 2d 498, 500 (Fla. 1994).  Courts have routinely held that no right to jury trial exists in civil administrative proceedings, including professional disciplinary proceedings akin to this case.  See State ex rel. Kehoe v. McRae, 38 So. 605 (Fla. 1905) (disbarment); State ex rel. De

Gaetani v. Driskell, 190 So. 461 (Fla. 1939) (revoking medical license).

In certain proceedings, such as those before boards or commissions, "it is sufficient if the accused is informed with reasonable certainty of the nature and cause of the accusation against him, has reasonable opportunity to defend against attempted proof of such charges, and the proceedings are conducted in a fair and impartial manner." Hadley v. Dep't. of Admin., Career Serv. Comm'n, 411 So. 2d 184, 187 (Fla. 1982). Indeed, the Florida Constitution provides that "[c]ommissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the function of their offices." Art. V, § 1, Fla. Const.

Contrary to Plaintiffs' argument the Act does not necessarily allow the final decisionmaker to determine whether or not to impose a sanction at all, but rather constrains the final decisionmaker to choose between available sanctions if a violation is found. The Act, therefore, does not unlawfully delegate "the uniquely legislative power of determining the nature and extent of [civil penalties] which may be assessed." Florida League of Cities, Inc. v. Administration Comm'n, 586 So.2d 405, 410 (Fla. 1st Dist. Ct. App. 1991). Furthermore, to the extent the Act fails to provide for judicial review, a declaration concerning the constitutionality of the Act as applied or some other form of review may nevertheless be available. See Nelson v. Lindsey, 151 So. 2d 131 (Fla. 1942) (recognizing authority of the court to conduct appropriate judicial review, regardless of any specifically

provided method of appeal).

### F.     Declaration of rights

As their final claim, Plaintiffs seek a declaration of their obligations under the law in the event the Court finds that the law is constitutional.  Before Plaintiffs may properly seek a declaratory judgment, they should seek an advisory opinion regarding the Acts' applicability to differing factual scenarios, as provided by § 11.045(5) and §112.3215(11), Fla. Stat.  <u>Florida Marine Fisheries Comm'n v. Pringle</u>, 736 So. 2d 17, 20 (Fla. 1st Dist. Ct. App. 1999).

## III.    CONCLUSION

Plaintiffs have failed to meet their burden to obtain a preliminary injunction and summary judgment.  Many of Plaintiffs' positions are contrary to the plain language of the Act.  Plaintiffs, furthermore, have not sufficiently demonstrated that the Act is unconstitutional on its face.  Accordingly, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion for Preliminary Injunction and for Final Summary Judgment (doc. 15) is denied.

DONE AND ORDERED this 12th day of May, 2006.

                              *s/ Stephan P. Mickle*
                              Stephan P. Mickle
                              United States District Judge