IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA ASSOCIATION OF
PROFESSIONAL LOBBYISTS, INC.,
a Florida not for profit corporation;
SPEARMAN MANAGEMENT COMPANY,
a Florida corporation; GUY M.
SPEARMAN III, a natural person;
RONALD L. BOOK, P.A., a Florida
professional association; and RONALD
L. BOOK, a natural person ,

      Plaintiffs,

vs.                                  CASE NO.: 4:06cv123-SPM/WCS

DIVISION OF LEGISLATIVE
INFORMATION SERVICES OF THE
FLORIDA OFFICE OF LEGISLATIVE
SERVICES, a Florida state agency; THE
FLORIDA COMMISSION ON ETHICS,
an independent constitutional commission;
TOM LEE, as President of the Florida
Senate; and ALLAN BENSE, as Speaker
of the Florida House of Representatives

      Defendants.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiffs are a lobbying organization, lobbying firms, and individuals who engage in lobbying activities. They are challenging the facial validity of an Act passed by the Florida Legislature during the December 2005 special session. The Act, chapter 2005-359, Laws of Florida, codified at sections 11.045 and

112.3215, regulates legislative and executive lobbying.

One of the main features of the Act is an expenditure[1] provision that prohibits gifts and payments by lobbyists to officials. The Act provides that "no lobbyists or principal shall make, directly or indirectly, <u>and</u> no member or employee of the of the legislature" nor "any agency official, member or employee shall knowingly accept, directly or indirectly, an expenditure." §11.045(4)(a) and § 112.3215(6)(a), Fla. Stat. (emphasis supplied). The use of the conjunctive "and" in the Act makes clear that the prohibition on expenditures is not a general prohibition on all lobbying expenditures. The prohibition applies only to expenditures that are made for lobbying purposes and accepted by an official.

Another feature of the Act is a disclosure provision that requires lobbying firms to file quarterly reports designating the total compensation owed to the lobbying firm from principals. § 11.045(3)(a)1.c. and § 112.3215(5)(a)1.c., Fla. Stat. In addition, lobbying firms must disclose the compensation owed by each principal. The reports must include the full name, business address, and telephone number of each principal, and the total compensation that each principal provided or owed to the lobbying firm. § 11.045(3)(a)2.b. and § 112.3215(5)(a)2.b., Fla. Stat.

---

[1] The term "expenditure" is defined as "a payment, distribution, loan, advance, reimbursement, deposit, or anything of value made by a lobbyist or principal for the purpose of lobbying." § 11.045(4)(a) and § 112.3215(6)(a), Fla. Stat.

CASE NO.: 4:06cv123-SPM/WCS

The Act contains enforcement provisions that allows for audits and the filing of sworn complaints. § 11.040(6), § 11.045, and § 112.3215, Fla. Stat. For legislative lobbying, every sworn complaint or audit indicating a possible violation (other than a late filed report) is subject to investigation by designated committees for each house. § 11.045(7), Fla. Stat. A committee's recommendation for penalty is reported to the President of the Senate or Speaker of the House and submitted to the majority of the appropriate house for a final determination. § 11.045(7), Fla. Stat. Authorized penalties include "a fine of not more than $5,000, reprimand, censure, probation, or prohibition of lobbying for a period of time not to exceed 24 months." § 11.045(7), Fla. Stat. For executive lobbying, every sworn complaint or audit indicating a possible violation (other than a late filed report) is subject to investigation by the Commission on Ethics. §§ 112.3215(8)(a) and (c), Fla. Stat. If the Commission on Ethics finds probable cause that a violation occurred, it submits a report to the Governor and Cabinet for a determination and imposition of a penalty. §§ 112.3215(9) and (10), Fla. Stat. Authorized penalties include reprimand, censure, or a prohibition on lobbying all agencies for a period not to exceed 2 years. § 112.3215(9), Fla. Stat. "If the violator is a lobbying firm, the Governor and Cabinet may also assess a fine of not more than $5,000." § 112.3215(10), Fla. Stat.

Plaintiffs challenge the Act on several fronts. They contend that the Act was not validly passed by the legislature because the Act was not read three

times after it was introduced by the House at the special session.  Plaintiffs contend that the Act usurps the constitutional authority of the Florida Supreme Court to regulate the practice of law.  Plaintiffs content that expenditure restrictions, disclosure requirements, and enforcement provisions violate constitutional guarantees of free speech and petition, due process, equal protection, privacy, and separation of powers.  Through this lawsuit, Plaintiffs seek an injunction to prevent enforcement of the Act.  They also seek a declaration of their obligations under the Act in the event the Court finds that the Act is constitutional.

In a prior order (doc. 80), the Court denied Plaintiffs' motion for preliminary injunction and motion for summary judgment.  Defendants have since filed a motion for summary judgment (docs. 85, 89, and 90).  There are no disputed issues of material fact and Defendants are entitled to judgment as a matter of law.

**1.     Valid Enactment**

Contrary to Plaintiffs' arguments, the Act was properly introduced as a topic for the December 2005 special session[2].  The three-day reading rule[3] was

---

[2] The Florida Constitution, Article III, section 3(c)(1) provides that in a special session convened by the Governor's proclamation, "only such legislative business may be transacted as within the purview of the proclamation . . . or is introduced by consent of two-thirds of the membership of each house."

[3] The Florida Constitution, Article III, section 7 provides that a bill "must be read in each house on three separate days, unless this rule is waived by two-

properly waived.

On the opening day by two-thirds vote, the legislature introduced HB 63-B, an "act relating to lobbying," dealing expressly with compensation reporting and expenditure limitations, and "any companion measures that may be passed by the Senate." Journal of the House, Special Session B, 2005 at 3. From that point forward, the House could have introduced and considered any bill relative to the legislative business of lobbying regulation, not just HB 63-B. A separate introduction was not necessary.

Thereafter, when the House went on to consider the bill that became the Act, SB 6B, "the rules were waived and SB 6B was read a third time by title." Id. It was not necessary to read the bill on three separate days, or even to read the title three times thereafter, because the rules were waived.

"[W]hen enrolled, signed, and filed, acts of the legislature are prima facie valid." State v. Kaufman, 430 So.2d 904, 905 (Fla. 1983). "Courts have no substantive power to review and nullify legislative proceedings but can determine whether the legislative journals show that a statute has been duly enacted." Id. (citations omitted). The Journal of the House shows that two-thirds membership voted to consider lobbying regulation as a matter of legislative business during the special session. The Journal of the House also shows that the three-day reading rule for SB 6B was waived. The Act was thus passed in accordance with

thirds vote."

constitutional requirements.  Defendants are entitled to judgment as a matter of law on these claims.

### 2. Regulation of the Practice of Law

Although the Florida Constitution, Article V, section 15, vests the Florida Supreme Court with "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted[,]" the Florida Supreme Court has recognized that the legislature may enact a law "'that affects the legal profession just as it can with regard to other occupations and professions." Pace v. State, 368 So.2d 340, 345 (Fla. 1979).  The Act does not overstep the legislature's authority as recognized in Pace.  Any impact that the Act has on the practice of law is incidental to legitimate lobbying regulation. Defendants are entitled to judgment as a matter of law on these claims.

### 3. Limited Nature of Expenditure Restriction

Contrary to Plaintiffs' argument, the Act does not impose an absolute ban on all lobbying expenditures.  The Act provides that "no lobbyists or principal shall make, directly or indirectly, and no member or employee of the of the legislature" nor "any agency official, member or employee shall knowingly accept, directly or indirectly, an expenditure." §11.045(4)(a) and § 112.3215(6)(a), Fla. Stat. (emphasis supplied).  The use of the conjunctive "and" in the Act makes clear the prohibition on expenditures applies only to expenditures that are made and accepted.  The Act's plain language shows that it amounts to no more than a

ban on gifts and payments to officials.

Plaintiffs cannot show that the Act's expenditure restrictions are facially unconstitutional. Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

### 4. Vagueness and Overbreadth

A regulation is void on its face if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). Terms used in the Act are defined with reasonable clarity. The enforcement provisions in the Act, furthermore, provide adequate standards. Discretion under the act to waive a requirement or penalty is tied to a good cause standard. See §§ 11.045(3)(e)5. and 6. and §§ 112.3215(5)(e)5., Fla. Stat. "'[G]ood cause' is a reasonable and intelligible standard that does not force people of general intelligence to guess at its meaning and therefore is not 'void for vagueness.'" McCallum v. City of Biddeford, 551 A. 2d 452, 453 (Me. 1988).

"[E]ven though marginal cases could be put where doubts might arise[,]" the Act should not be struck down for vagueness. United States v. Harriss, 347 U.S. 612, 618 (1954). Administrative interpretation and enforcement is relevant to Plaintiffs' facial challenge of the Act. Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1982). Plaintiffs may obtain an advisory opinion to address specific questions about the applicability and interpretation of the Act. § 11.045(5) and

§112.3215(11), Fla. Stat.  The availability of an advisory opinion weighs against a finding of vagueness.  See Comm'n on Indep. Colleges and Universities v. New York Temp. State Comm'n on Regulating of Lobbying, 534 F.Supp. 489, 502-03 (N.D.N.Y. 1982).  Plaintiffs may also make as applied challenges to the Act or challenge any part of the Act that "factual development shows can never be applied constitutionally." Florida League of Professional Lobbyists, Inc. v. Meggs, 87 F.3d 457, 461 (11th Cir. 1996).  At this point, however, the Court finds no basis to strike the Act down as void for vagueness.

Plaintiffs also argue that the Act is overbroad[4] because it requires lobbying firms to report all compensation, irrespective of whether the compensation is related to lobbying activities.  Plaintiffs' overbreadth argument is based on a flawed reading of the Act.  The Act specifies that the compensation required to be reported is "for any lobbying activity."  § 11.045(1)(b) and § 112.3214(1)(c), Fla. Stat.  Lobbying firms need only report compensation earned for lobbying activity.[5]  Moreover, the Act does not constitute an overbroad restriction on the

---

[4]  A law will be struck down as overbroad if "it does not aim specifically at evils within the allowable area of government control . . . but sweeps within its ambit other activities that constitute an exercise of freedom of speech . . . ." Thornhill v. Alabama, 310 U.S. 88, 97 (1940).

[5]  For legislative branch lobbying, the term "lobbying" is defined as "influencing or attempting to influence legislative action or nonaction through oral or written communication or an attempt to obtain the goodwill of a member or employee of the Legislature."  § 11.045(1)(f), Fla. Stat.  For executive branch lobbying, the term "'[l]obbies' means seeking on behalf of another person, to influence an agency with respect to a decision of the agency in the area of policy

Plaintiffs' exercise of freedom of speech because "'[a]pplication of the burdens of registration and disclosure of receipts and expenditures to lobbyists does not substantially interfere with the ability of the lobbyist to raise his voice.'"  Meggs, 87 F.3d at 460 (quoting Fair Political Practices Comm'n v. Superior Ct. of Los Angeles, 599 P.2d 46, 54 (1979)).  Defendants are entitled to judgment as a matter of law on Plaintiffs' overbreadth and vagueness claims.

### 5. Equal Protection

Plaintiffs cannot reasonably argue "that those who for hire attempt to influence legislation or who collect or spend funds for that purpose," Harriss, 347 U.S. at 625, are similarly situated with other citizens who petition the government.  The state has a compelling interest in imposing regulations on paid lobbyists.  Meggs, 87 F.3d at 462 (recognizing compelling interest of state of Florida in lobbying regulation).  "[T]o maintain the integrity of a basic governmental process[,]" the government is entitled to collect information about "who is being hired, who is putting up the money, and how much."  Harriss, 347 U.S. at 625.  The burdens imposed by the Act on paid lobbyists do not violate equal protection principals.  Defendants are entitled to judgment as a matter of

---

or procurement or an attempt to obtain the goodwill of an agency official or employee.  'Lobbbies' also means influencing or attempting to influence, on behalf of another, the Constitution Revision Commission's action or nonaction through oral or written communication or attempt to obtain the goodwill of a member or employee of the Constitution Revision Commission."  § 112.3215(1)(f), Fla. Stat.

CASE NO.: 4:06cv123-SPM/WCS

law on Plaintiffs' equal protection claims.

**6.     Privacy**

Plaintiffs's privacy arguments under Article I, section 23 of the Florida Constitution and the right to privacy recognized in the United States Constitution fail as a matter of law because the privacy rights protect natural persons.

The compensation disclosure requirement of the Act applies only to "lobbying firms." § 11.045(3) and § 112.3214(5), Fla. Stat.  A lobbying firm is a "business entity." § 11.045(1)(g) and § 112.3214(1)(g), Fla. Stat.  The individual plaintiffs in this case conduct their lobbying activity through lobbying firms. Plaintiff Book is an attorney and lobbyist whose firm is a professional association. Plaintiff Spearman's lobbying firm is a corporation.  Lobbying firms have no right to privacy under the Florida Constitution because the right to privacy "is a personal one, inuring solely to individuals." Alterra Healthcare Corp. v. Estate of Francis Shelley, 827 So. 2d 936, 941 (Fla. 2002).   Under the United States Constitution, the right to privacy extends only to such fundamental interests as marriage, procreation, family relationships, and the rearing and education of children.  Carey v. Population Serv. Int'l, 431 U.S. 678, 684-85 (1977). "[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."  California Bankers Ass'n v. Shultz, 416 U.S. 21, 65 (1974). Defendants are entitled to judgment as a matter of law on Plaintiffs' privacy

CASE NO.: 4:06cv123-SPM/WCS

claims.

### 7. Enforcement Provisions

Plaintiffs' arguments that the Act's enforcement provisions violates the right to a jury trial and due process and the separation of powers must fail. Courts have routinely held that no right to jury trial exists in civil administrative proceedings, including professional disciplinary proceedings akin to this case. See State ex rel. Kehoe v. McRae, 38 So. 605 (Fla. 1905) (disbarment); State ex rel. De Gaetani v. Driskell, 190 So. 461 (Fla. 1939) (revoking medical license). Due process is satisfied in proceedings before boards or commissions "if the accused is informed with reasonable certainty of the nature and cause of the accusation against him, has reasonable opportunity to defend against attempted proof of such charges, and the proceedings are conducted in a fair and impartial manner." Hadley v. Dep't. of Admin., Career Serv. Comm'n, 411 So. 2d 184, 187 (Fla. 1982). The Act satisfies these requirements.

With regard to Plaintiffs' separation of powers argument, the Florida Constitution provides that "[c]ommissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the function of their offices." Art. V, § 1, Fla. Const. The Act does not unlawfully delegate "the uniquely legislative power of determining the nature and extent of [civil penalties] which may be assessed," Florida League of Cities, Inc. v.

Administration Comm'n, 586 So.2d 405, 410 (Fla. 1st Dist. Ct. App. 1991), because it constrains the final decisionmaker to choose between available sanctions if a violation is found.  Furthermore, to the extent the Act fails to provide for judicial review, a declaration concerning the constitutionality of the Act as applied or some other form of review may nevertheless be available.  See Nelson v. Lindsey, 151 So. 2d 131 (Fla. 1942) (recognizing authority of the court to conduct appropriate judicial review, regardless of any specifically provided method of appeal).  Accordingly, the Act does not violate Plaintiffs' rights to jury trial, due process, or principles of separation of powers.  Defendants are entitled to judgment as a matter of law on these claims.

### 8.     Declaration of Rights

As their final claim, Plaintiffs seek a declaration of their obligations under the Act in the event the Court rejects their facial challenge.  Before Plaintiffs may properly seek a declaratory judgment, they should seek an advisory opinion regarding the Acts' applicability to differing factual scenarios, as provided by § 11.045(5) and §112.3215(11), Fla. Stat.  Florida Marine Fisheries Comm'n v. Pringle, 736 So. 2d 17, 20 (Fla. 1st Dist. Ct. App. 1999).  Administrative interpretation and enforcement is relevant to the facial validity of the Act.  Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1982).  "[H]ypothetical borderline situations" are not an appropriate basis for ruling on the constitutionality of fact-

based challenges that may arise in the future.  Meggs, 87 F.3d at 461 (quoting Harriss, 347 U.S. at 626).

### 9. Conclusion

Plaintiffs are not entitled to relief on their various challenges to the Act. There are no disputed issues of material fact and Defendants are entitled to judgment as a matter of law.  Accordingly, it is

ORDERED AND ADJUDGED:

1. Defendants' motions for summary judgment (docs. 85, 89, and 90) are granted.

2. The clerk shall enter judgment in favor of Defendants and against Plaintiffs on all claims.

DONE AND ORDERED this 28th day of December, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge